Turner, J.
 

 Under Section 5611-2, General Code, the question for our consideration is: Are the decisions of the Board of Tax Appeals reasonable and lawful?
 

 As phrased by the Attorney General, the question is raised: “Did the Board of Tax Appeals make an unlawful or unreasonable decision when it refused to exempt from taxation that'portion of a leased building occupied by appellant and various charitable organizations, and leave subject to taxation the remaining portion thereof occupied by commercial tenants?”
 

 The appellant has phrased the matter as involving-three questions as follows:
 

 “1. Does the property involved in these cases, consisting of the upper nine stories of an eleven-story office building, belonging- to an exclusively charitable institution, and part of the basement of same, all of which is used exclusively for charitable purposes by the owner, said upper nine stories and basement being-separated from the two lower stories by horizontal floors and the various parts of the basement being- separated by vertical walls,
 
 come within
 
 that part of Article XII, Section 2 of the Constitution of Ohio, which provides as follows: 4 General laws may be passed to exempt * * * institutions used exclusively for charitable purposes * * V and within that part of Section 5353 of the General Code of Ohio which provides as
 
 *164
 
 follows: ‘ * * * property belonging to institutions used exclusively for charitable purposes, shall be exempt from taxation.’
 

 “2.
 
 Under the Constitution and statutes of the state of Ohio is the property described in question No. 1, above, as being used exclusively for charitable purposes by the owner,
 
 severable
 
 for purposes of taxation from the part of the building which is not used for charitable purposes so that the property so used exclusively for charitable purposes may be exempted from taxation when it is the sole property described in the application for exemption?
 

 “3. Under the Constitution and laws of the state of Ohio where a large office building belonging to an exclusively charitable institution is divided as stated in question No. 1, above, and the parts specifically described in the application for exemption of property from taxation are used exclusively for charitable purposes and the remaining parts of the building are used for commercial purposes, may the parts of the building which are used for commercial purposes, be appraised for purposes of taxation, having due reference to the taxable value of the entire property, so that the parts used for commercial purposes may be taxed and
 
 the parts used exclusively for charitable purposes may be exempted from taxation?”
 

 Before taking up the main question, we will dispose of the jurisdictional ones.
 

 There is no contention by the appellee that the case of
 
 Huntington Assn., Inc.,
 
 v.
 
 Tax Commission of Ohio,
 
 in which appellant was a party, decided on June 22, 1942, by the Court of Appeals for Cuyahoga county, is
 
 res judicata
 
 of the issues here involved. In that case appellant was merely a sublessee for a ten-year term from the Huntington Association, Inc., which was then the owner of the ninety-nine year lease on the premises here involved.
 

 
 *165
 
 In the case of
 
 Ursuline Academy of Cleveland
 
 v.
 
 Board of Tax Appeals,
 
 141 Ohio St., 559, 49 N. E. (2d), 680, we held:
 

 “The Board of Tax Appeals may not consider an application for exemption of property under Section 5349 or Section 5353, General Code, unless the application for exemption has attached to it a certificate or affidavit executed by the county treasurer certifying that taxes, assessments, penalties and interest levied and assessed against the property sought to be exempted have been paid in full to the date upon which the application for exemption is filed, or are such as may be remitted under the proviso in Section 5570-1, General Code.”
 

 In the applications for exemption for the years 1941, 1942 and 1943, the county treasurer’s certificates show unpaid taxes.
 

 However, there appears in the record a certificate of the county treasurer under date of June 17, 1943 (which was prior to consideration of the applications by the Board of Tax Appeals), showing that taxes, assessments, penalties and interest on the premises had been paid in full to and including the last half of 1940, as of December 31, 1942.
 

 The record further shows that one-third of the total taxes for the years 1941 and 1942 were paid and that the collection of the unpaid taxes and penalties for the years 1941 and 1942 was temporarily enjoined by the Common Pleas Court of Cuyahoga county, in case No. 518492, entitled
 
 Welfare Federation of Cleveland
 
 v.
 
 Boyle, Treas.,
 
 pending final determination of these proceedings. (Compare
 
 Bell
 
 v.
 
 State, ex rel. Methodist Book Concern,
 
 129 Ohio St., 463,195 N. E., 867;
 
 State, ex rel. Methodist Book Concern,
 
 v.
 
 Guchenberger, Aud.,
 
 133 Ohio St., 27,10 N. E. [2d], 1001;
 
 State, ex rel. Methodist Book Concern,
 
 v.
 
 Guckenberger, Aud.,
 
 133 Ohio St., 373, 14 N. E. [2d], 9.)
 

 
 *166
 
 It is doubtful whether an injunction restraining the county treasurer from collecting the taxes due may excuse compliance with the terms of Section 5570-1, General Code, which provides in part: “The Board of Tax Appeals shall not consider an application for exemption of property under any of the sections enumerated herein [including Section 5353] unless the application has attached thereto a certificate or affidavit executed by the county treasurer certifying that taxes, assessments, penalties and interest levied and assessed against the property' sought to be exempted have been paid in full to the date upon which the application for exemption is filed.
 

 .
 

 “Provided, however, that taxes, penalties and interest which have accrued after the property began its use for the exempt purpose but in no case prior to the date of acquisition of the title to said property by applicant, may be remitted by the county auditor, with the consent of the Board of Tax Appeals.”
 

 As the first (1941) application for exemption bears the file mark of the Board of Tax Appeals, of December 29, 1941, there is raised the question of compliance with the foregoing provision of Section 5570-1, General Code. We are of the opinion that under the proviso of Section 5570-1, supra, the Board of Tax Appeals had jurisdiction to consider the application for the reason that the evidence before the board
 
 at the time of consideration
 
 disclosed that the only unpaid taxes and interest due on the property sought to be exempted were such as might be remitted by the county auditor with the consent of the Board of Tax Appeals, if the board consented to the exemption.
 

 In the case of
 
 Ursuline Academy of Cleveland
 
 v.
 
 Board of Tax
 
 Appeals, 141 Ohio St., 563, 49 N. E. (2d), 674, we held:
 

 “Under the proviso in Section 5570-1, General Code, the Board of Tax Appeals has jurisdiction to consider
 
 *167
 
 an application for exemption from taxation where the application or evidence before the board discloses that the only unpaid taxes, penalties and interest due on the property sought to be exempted are such as may be remitted by the county auditor with the consent of the Board of Tax Appeals if the board consents to the exemption.”
 

 Therefore, the Board of Tax Appeals did not err in proceeding with the consideration of the applications for exemption in view of the treasurer’s certificate dated June 17, 1943.
 

 It is contended on behalf of appellee that the property described in the applications for exemption is not
 
 owned
 
 by appellant, and that, therefore, appellant has no right, under either Section 5609 or Section 5616, General Code, to apply for exemption. While the stipulation shows that the underlying fee simple title is now in Central United National Bank, trustee, yet that stipulation also discloses that The Welfare Federation of Cleveland became the sole owner of the underlying ninety-nine year lease, renewable forever, prior to tax lien day 1941.
 

 The only interest of the owner of the fee simple underlying a ninety-nine year lease, renewable forever, is a possibility of reverter, the right to receive the stipulated rental or consideration and the right to enforce performance of other contractual covenants contained in the lease.
 

 While the ninety-nine year lease under which appellant holds the premises requires such premises to remain in the name of the grantor on the tax duplicate (now by assignment Central United National Bank, Trustee), we are of the opinion that the appellant has a freehold estate in the property. In other words, appellant’s interest in the premises in question constitutes property “belonging” to appellant. It was held in the case of
 
 Humphries, Aud.,
 
 v.
 
 Little Sisters of the
 
 
 *168
 

 Poor,
 
 29 Ohio St., 201, that “real estate leased to such an institution for a term of years at a stipulated rent is not exempt from taxation, although, by the terms of the lease, the institution may have agreed with the lessor to pay the taxes.” Yet at page 207, Judge White said: “We do not say that the legal title must be vested in the institution. If the legal title were held in trust for the sole use and benefit of the institution, the property, in such case, would be regarded as belonging to the institution.
 
 Gerke
 
 v.
 
 Purcell
 
 [25 Ohio St., 229].”
 

 In the case of
 
 Davis
 
 v.
 
 City of Cincinnati,
 
 36 Ohio St., 24, it was held that a lessee for a term of ten years having no other interest in the real estate was not an owner even though the lease provided for the payment by the lessee of all assessments upon the property. We think there is no analogy for the purposes of our question here between a term merely for ten years ,and one for ninety-nine years,
 
 renewable forever.
 

 In the case of
 
 Ralston Steel Car Co.
 
 v.
 
 Ralston,
 
 112 Ohio St., 306, 147 N. E., 513, 39 A. L. R., 334, it was held:
 

 “Where the owner of real estate leases the same to another and to his heirs and assigns for a term of 99 years, renewable forever, the estate created by such instrument becomes a freehold estate in real property and becomes subject to the laws of descent as an estate in fee.”
 

 Section 10503-11, General Code, provides: “Permanent leasehold estates, renewable forever, shall be subject to the same law of descent as estates in fee are subject to by the provisions of this chapter.”
 

 Section 11655, General Code, provides: “Lands and - tenements, including vested legal interests therein, permanent leasehold estates renewable forever, * * * shall be subject to the payment of debts, and liable to be taken on execution and sold as hereinafter provided.”
 

 
 *169
 
 It was held in
 
 Cincinnati College
 
 v.
 
 Yeatman, Aud.,
 
 30 Ohio St., 276, that an estate for years in real property, renewable forever, is real and not personal property within the meaning of the tax laws of Ohio. See, also,
 
 Village of St. Bernard
 
 v.
 
 Kemper,
 
 60 Ohio St., 244, 54 N. E., 267, 45 L. R. A., 662;
 
 Loring
 
 v.
 
 Melendy,
 
 11 Ohio, 355;
 
 Northern Bank of Ky.
 
 v.
 
 Roosa,
 
 13 Ohio, 334. (Since the amendment of Section 2658, General Code, effective October 15, 1931, taxes on real estate are no longer the
 
 personal
 
 obligation of the owner.)
 

 Both appellant and appellee have discussed Section 5330, General Code, which provides for the valuing and assessing in the names of lessees lands belonging to the state, municipal corporations, religious, scientific or benevolent societies or institutions, or to trustees for free education only, or held in trust by the state. Appellant claims that Section 5330, General Code, is not applicable here. Appellee says: “* * * it is unnecessary for the court to pass upon this phase of the matter for the reason that the finding of the board that the property was not used exclusively for charitable purposes must be sustained.” We find it unnecessary to consider Section 5330, General Code, for the reason that we find nothing in that section prejudicial to the claims of appellant. In respect of the property in question appellant is the
 
 taxpayer, holder
 
 and
 
 owner
 
 and the property in question
 
 belongs
 
 to appellant.
 

 We are of the opinion that appellant has the right, under Section 5616, General Code, to sign a complaint respecting the liability of the property in question to taxation or to its exemption therefrom. We are of the opinion that under the provisions of Section 5681, General Code, “each person
 
 holding
 
 lands shall pay the tax assessed thereon each year. # * *” (Italics ours.) Appellant is a taxpayer within the meaning of Section 5609, General Code.
 

 
 *170
 
 Having disposed of the jurisdictional questions we come to the principal questions in the case, to wit:
 

 (1) Whether the appellant is an institution used exclusively for charitable purposes, and
 

 (2) Whether the property in question is being used
 
 exclusively
 
 for charitable purposes.
 

 To justify the exemption of the property both questions must be answered in the affirmative.
 

 The applicable part of Section 2 of Article XII of the Constitution provides as follows:
 

 ‘ ‘# * * General laws may be passed to exempt * * * institutions used exclusively for charitable purposes. * * * > >
 

 Section 5353, General Codes, provides in part:
 

 “* * * Property belonging to institutions used exclusively for charitable purposes, shall be exempt from taxation. ’ ’
 

 (1) That the tenants occupying floors three to ten, inclusive, of the building are such charitable institutions has been stipulated by the parties. Such stipulation, however, does not cover appellant. During oral argument counsel for appellee argued that the charges for bookkeeping service for other welfare organizations, charges for information'furnished the Federal Housing Administration and the sale (at a loss) of books entitled “Social Work in Greater Cleveland” prevent appellant being held to be a charitable institution.
 

 The stipulation shows that no profit was made or expected from either the bookkeeping service or the furnishing of information to the Federal Housing Administration. The charges made for such service were solely for reimbursement. We are of the opinion that neither the reimbursement for the foregoing services nor the collection of rentals on the part of the property here in question affected appellant’s status. The same may be said of the sale of the books.
 

 
 *171
 
 Without reviewing the stipulated evidence of appellant’s purpose clause, regulations and activities, but merely referring to the same as set forth in the statement of facts,
 
 supra,
 
 we are of the opinion that appellant is a charitable institution within the purview of Section 2 of Article XII of the Constitution and Section 5353 of the General Code.
 

 (2) There remains, therefore, only the question of whether appellant’s property sought here to be exempted is used exclusively for charitable purposes. Appellant’s principal reliance is upon the case of
 
 Cleveland Library Assn.
 
 v.
 
 Pelton, Treas.,
 
 36 Ohio St., 253, decided in 1880 on the authority of
 
 Cincinnati College
 
 v.
 
 Yeatman, Aud., supra,
 
 in which latter case it was held in the first paragraph of the syllabus:
 

 “There may be several and distinct tenements in the same building, under the same roof, as well where one is
 
 over
 
 the other, as where one is
 
 beside
 
 the other.”
 

 Before discussing the
 
 Cleveland Library Assn, case,
 
 we call attention to the fact that we do not have in the instant case any question of ‘ ‘ several and distinct tenements in the same building, under the same roof.” What we do have here is a building and the land on which it is situated held by appellant as a single unit. Section 5560, General Code, requires each separate parcel of real property to be listed agreeably to
 
 ownership.
 
 There is no authority for splitting the listing of a separate parcel of real property, for taxation or exemption therefrom, where the ownership is not divided.
 

 There is an analogy, if not identity, between the instant case and the
 
 Cleveland Library Assn, case
 
 wherein it was held in the third paragraph of the syllabus as follows:
 

 “The fact that the building is so constructed, that the parts leased or otherwise used with a view to profit cannot bo separated from the residue by definite lines, is no obstacle to a valuation of such parts for pur
 
 *172
 
 poses of taxation, having due reference to the taxable value of the entire property.”
 

 The effect of that holding was to enable an institution of purely public charity
 
 at that time
 
 to seek exemption of part of its block of buildings not being used with a view to profit. It is to be noted that the action below by the Cleveland Library Association was brought by the plaintiff to enjoin the auditor and treasurer of Cuyahoga county from collecting taxes and assessing penalties thereon for the year 1877. This court directed the denial of the exemption of
 
 all
 
 of the property, and in the course of the opinion by Judge Johnson (page 260) it was said:
 

 “While we do not intend to suggest a doubt of the right of this corporation to accept this munificent donation of Mr. Case, the property being an entirety and suitable for its purposes, yet we think it clear, that as to so much of this building and grounds, not necessary for its use, which is rented out, should not be exempted from its equal share of taxation.”
 

 Appellant also relies on the definition of “exclusively” as used in the case of
 
 City of Toledo
 
 v.
 
 Jenkins et al., Board of Tax Appeals,
 
 143 Ohio St., 141, 54 N. E. (2d), 656, in which it was held in paragraph seven of the syllabus:
 

 “Some of the real property in a municipally owned and operated public airport unit may be taxable and the remainder exempt from taxation. The term 'exclusively,’ as used in Section 2, Article XII of the Constitution, and read into Section 5351, General Code, by interpretation, applies to the use of particular parts of the property and not to the unit as a whole.”
 

 In the
 
 Toledo case
 
 the court was considering a public utility owned by the city of Toledo and in paragraph six of the syllabus it was held:
 

 “The fact that revenue is incidentally derived from
 
 *173
 
 public property does not in and of itself alter the public character of the use.”
 

 That case involved the property of an airport consisting of eight parcels of land totaling about 506 acres,. The court found that a part of this property rented to others was not presently needed for the airport. There is nothing in the
 
 Toledo case
 
 which questions either the statement of Chief Justice Weygandt in
 
 Pfeiffer et al., Trustees,
 
 v.
 
 Jenkins et al., Bd. of Tax Appeals,
 
 141 Ohio St., 66, 46 N. E. (2d), 767, in which he said at page 69, “obviously, ‘used exclusively’ does not mean ‘used in part,’ ” or the language of Judge Allen in
 
 Jones, Treas.,
 
 v.
 
 Conn et al., Trustees,
 
 116 Ohio St., 1,155 N. E., 791, where the judge said at page 10, in respect of Section 2, Article XII of the Constitution: “Furthermore, when the amendment employed the word ‘exclusively,’ it placed as narrow construction upon the meaning of the clause as was possible; for, as pointed out in Zollman on Charities, p. 473, ‘Property or buildings might actually be used for charitable purposes and yet not be used exclusively.’ ”
 

 In the case of
 
 President and Trustees of Miami University
 
 v.
 
 Evatt, Tax Commr.,
 
 144 Ohio St., 434, 59 N. E. (2d), 366, the grantors had deeded to the university a tract of land which became a part of the campus, but reserved to tw.o grantors, as long as they or the survivor of them should live, the right to occupy and live in the residence, rent free with heat furnished by grantee, with an obligation upon the grantors to maintain the residence in good condition and to maintain fire and windstorm insurance. The Board of Tax Appeals held the tract exempt excepting one acre of land and the residence building occupied by the two grantors. This court affirmed the decision of the Board of Tax Appeals, holding that there was no ground for exemption of the residence.
 

 We have already pointed out the distinction be
 
 *174
 
 tween the
 
 Cincinnati College case, supra,
 
 and the instant case. It would be difficult to point out a distinction in principle between the instant case and the case of
 
 Cleveland, Library Assn.
 
 v.
 
 Pelton, Treas., supra.
 
 However, there have been changes in both the constitutional and statutory provisions respecting the exemption of property belonging to a charitable institution, and the case of
 
 Cleveland Library Assn. v. Pelton, Treas., supra,
 
 may be distinguished on that ground alone. However, if, as appellant contends, the doctrine of that case is'still applicable, we would have to reverse the same to be consistent with the holdings of this court since the last amendment of Section 2, Article XII of the Constitution.
 

 In
 
 Benjamin Rose Institute
 
 v.
 
 Myers, Treas.,
 
 92 Ohio St., 252, 110 N. E., 924, L. R. A. 1916D, 1170, it was held:
 

 “The real estate belonging to an institution of pure-, ly public charity is exempt from taxation only when used exclusively for charitable purposes, and if such real estate is rented for commercial and residence purposes it is not exempt, although the income arising from such use is devoted wholly to the purpose of the charity.”
 

 In the case of
 
 Cullitan, Pros. Atty.,
 
 v.
 
 Cunningham Sanitarium,
 
 134 Ohio St., 99, 16 N. E. (2d), 205, this court held:
 

 “1. There is no presumption favorable to the exemption of property from taxation. An exemption from taxation must be clearly and expressly stated in the statute and must be such only as is authorized by the Constitution.
 

 “2. Under the provisions of Section 5353, G-eneral Code, enacted pursuant to authority conferred by Section 2, Article XII of the state Constitution, institutions used exclusively for charitable purposes are exempted from taxation. Such use being the criterion of
 
 *175
 
 sucli exemption, the right is lost if the property be appropriated to other uses.”
 

 In the case of
 
 Zindorf
 
 v.
 
 Otterbein Press,
 
 138 Ohio St., 287, 34 N. E. (2d), 748, we held:
 

 “The use of property exclusively for charitable purposes is the criterion of exemption thereof from taxation. The right of exemption, derived from Section 2 of Article XII of the state Constitution, is lost if the property be appropriated to other uses.”
 

 In the case of
 
 In re Estate of Taylor,
 
 139 Ohio St., 417, 40 N. E. (2d), 936, we held:
 

 “A right to exemption from taxation must appear with reasonable certainty in the language of the Constitution or valid statute and must not depend upon a doubtful construction of such langage.”
 

 As we held in the cases of
 
 Incorporated Trustees of Gospel Worker Society
 
 v.
 
 Evatt, Tax Commr.,
 
 140 Ohio St., 185, 42 N. E. (2d), 900, and
 
 Wehrle Foundation
 
 v.
 
 Evatt, Tax Commr.,
 
 141 Ohio St., 467, 49 N. E. (2d), 52, the test to be applied is the present use of the property and unless the present use of the property is exclusively for charitable purposes the property may not be exempted from taxation although owned by a charitable institution.
 

 At page 473 of the
 
 Wehrle case
 
 we said:
 

 “We have no doubt that The Wehrle Foundation is a charitable institution devoted to a worthy cause, but under the plain language of the statute its property was not, at the time the exemption herein was asked for, being used exclusively for charitable purposes.”
 

 In the case of
 
 Crown Hill Cemetery Assn.
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 399, 55 N. E. (2d), 660, we held: “Taxation of property is the rule and exemption the exception.”
 

 In the case of
 
 Bank of Commerce
 
 v.
 
 Tennessee,
 
 161
 
 *176
 
 U. S., 134, 146, 40 L. Ed., 645, 649, 16 S. Ct., 456, Mr. Justice Peekham said:
 

 ‘ ‘ Taxes being the sole means by which sovereignties can maintain their existence, any claim on the part of any one to be exempt from the full payment of his share of taxes on any portion of his property must on that account be clearly defined and founded upon plain language. There must be no doubt or ambiguity in the language used upon which the claim to the exemption is found. It has been said that a well founded doubt is fatal to the claim; no implication will be indulged in for the purpose of construing the language used as giving the claim for exemption, where such claim is not founded upon the plain and clearly expressed intention of the taxing power. ” ■
 

 In 2 Cooley on Taxation (4 Ed.), 1443, Section 688, it is said:
 

 “Of course if the part not used for exempt purposes is wholly separate and apart from the other property used for exempt.purposes, then there is no question but that the nonexempt part should be taxed and the exempt part not taxed. Often, however, it is difficult to separate the exempt part from the nonexempt part, as where part of a building is used for exempt purposes and a part for nonexempt purposes. In such a case, if the statute be strictly construed, it would seem that if part is used for a nonexempt purpose then the building, considered as an entirety, is not ‘exclusively’ used for exempt purposes; and this has either been assumed without discussion or directly held in some cases refusing any exemption at all.”
 

 Following the foregoing language, Cooley says: “On the other hand, the better rule seems to be that if the exempt and nonexempt parts are separable, for purposes of valuation, the former should be held not taxable and the latter taxable.”
 

 Outside Ohio the authorities are divided in respect
 
 *177
 
 of whether strict or liberal construction is to be given to constitutional and statutory provisions for exemption from taxation. In Ohio it is so thoroughly settled that strict construction is to be applied that tax cases from other states which follow liberal construction are of no value in deciding Ohio exemptions. Illustrative of the holdings of other states which follow the rule of strict construction is the case of
 
 Gymnastic Assn. of South Side of Milwaukee
 
 v.
 
 City of Milwaukee, 129
 
 Wis., 429, 109 N. W., 109, wherein it was said (page 438) : “The property in question is a single nonseverable building together with the ground on which it stands. Only when the ‘property’ is exclusively used for educational purposes can it be exempt at all. It seems obvious that a single indivisible piece of property cannot, in any proper sense, be exclusively so used when parts of it are permanently occupied for other purposes.”
 

 There is but one parcel of property here involved. We do not have here the situation of a building, the different floors of which are separately owned. There is no authority for splitting the listing of property for taxation in the manner sought by appellant, to wit, part of a single parcel of property under single ownership to be exempt and part nonexempt. If there were different owners of the different floors we would have a different question sticli as was presented in the case of
 
 Cincinnati College
 
 v.
 
 Yeatman, Aud., supra.
 
 (See reference to Section 5560, General Code,
 
 supra.)
 

 In the case of
 
 Ursuline Academy of Cleveland
 
 v.
 
 Board of Tax Appeals, supra,
 
 we held:
 

 “2. Under Section 5349 or Section 5353, General Code, property belonging to a public college, academy or institution of learning not publicly owned may be exempted from taxation only if used exclusively for a charitable purpose at the time the exemption is sought. ’ ’
 

 
 *178
 
 In the case of
 
 East Cleveland Post No. 1500, Veterans of Foreign Wars,
 
 v.
 
 Board of Tax Appeals,
 
 139 Ohio St., 554, 41 N. E. (2d), 242, this court in a
 
 per curiam
 
 opinion affirmed the decision of the Board of Tax Appeals which held: * * Under the policy of this state with reference to exemption from taxation as expressed in constitutional and statutory provisions a charitable institution owning a building, which, together with land on -which it is situated, is a single unit is entitled to have it exempted only if it is exclusively used for charitable purposes. And if such institution elects to use part of said building for commercial purposes and thus enter into competition with others who are paying taxes, it must bear its share of the burden of taxation.”
 

 While it is true in that case that the entire property was sought to be exempted, this court did not modify the decision of the Board of Tax Appeals as it had the power to do under Section 5611-2, General Code.
 

 The case of
 
 Pfeiffer et al., Trustees,
 
 v.
 
 Jenkins et al., Board of Tax Appeals, supra,
 
 bears some analogy to the instant case though hardly on all fours with it. In that case, trustees of the Akron Public Library sought exemption for a building acquired in the year 1940. The application for exemption for the year 1941 set forth that the third floor of the building was occupied by commercial tenants; and that one-half of the second floor and the basement were occupied by a library-sponsored W. P. A. project for the indexing and filming of newspaper files. The W. P. A. project employing a hundred people was sponsored by the library. The files to be indexed belonged partly to the Akron Beacon Journal, partly to the Akron Public Library and partly to the Ohio State Archaeological and Historical Society. The photostats and index were to be the property of the Akron Public Library when completed. The library received no remuneration for this
 
 *179
 
 project. As the remodeling of the building progressed, the W. P. A. project was moved from the basement and second floor to the third floor where it was being operated at the time of the hearing. The use of the third floor by commercial tenants diminished until January 31, 1942, when all had moved out. The children’s department of the library moved into the building on January 1, 1942, and other departments of the library had moved in before February 14, 1942. The Board of Tax Appeals held the property taxable for the year 1941 and denied exemption for the reason that during that year the property was not used exclusively for a public purpose.
 

 In affirming the decision of the Board of Tax Appeals this court held:
 

 “2. Under the provisions of Section 5351, General Code, and Section 2 of Article XII of the Constitution of Ohio, relating to the exemption from taxation of' public property used for a public purpose, such use must be exclusive.”
 

 Appellant concedes “that any property of a charitable institution which is not used exclusively for charitable purposes is taxable,” but contends that the portion of the building not used for commercial purposes is used exclusively for charitable purposes.
 

 It its brief appellant says: “We submit that * 41 * the building involved in these cases should be divided horizontally for the purpose of valuation, for tax purposes, of the parts thereof which were used for commercial purposes, having due reference to the taxable value of the entire premises, and that the parts of the building that were used exclusively for charitable purposes should be exempted from taxation.” In these contentions appellant invites us to depart from our rule of strict construction in exemption cases, or legislate, which is not a function of this court.
 

 This court is not unmindful of the public service
 
 *180
 
 which is being rendered by The Welfare Federation of Cleveland, but as we see it, the policy of this state as set forth in Section 2, Article XII of the Constitution of Ohio and Section 5353 of the General Code expressly forbids the exemption of property where the use is not
 
 exclusively
 
 for charitable purposes. We are of the opinion that there is no authority in Ohio for making a separation of a single building
 
 under single .owner
 
 ship, whereby a part of the building used for commercial purposes may be held to be separate and distinct from the rest of the building used for charitable purposes. The only remedy for the situation which we can point out is to be found in the following language used by Chief Justice Rosenberry in
 
 Cardinal Publishing Co.
 
 v.
 
 City of Madison,
 
 208 Wis., 517, 520, 243 N. W., 325: “If the plaintiff wishes to claim the benefit of the exemption it should keep itself within the 'field- prescribed by the legislature [and in our case, the Constitution as well]. Whether it goes out of that field or not is a matter of choice. It may stay in and receive the exemption. It may depart from it and pay its taxes. It has chosen to depart, therefore its property is subject to taxation.
 

 Being of the opinion that the decisions of the Board of Tax Appeals in the instant cases are reasonable and lawful, such decisions should be and they hereby are affirmed.
 

 Decisions affirmed.
 

 Matthias, J., concurs.
 

 Weygandt, C. J,, and Bell, J., concur in paragraphs one to eight, inclusive, of the syllabus and in the judgment, but dissent from paragraph nine of the syllabus.
 

 Williams and Hart, JJ., concur in paragraphs one, five, six, seven, eight and nine of the syllabus, but dissent from paragraphs two, three and four of the syllabus and from the judgment.