KANNER, Judge.
Appellee, The Good Samaritan Hospital Association, Inc., a non-profit Florida corporation, instituted an injunctive proceeding against appellants, Edgar W. Maxwell' as tax assessor of Palm Beach County,. Stetson O. Sproul as tax collector of that county, and Ray E. Green as Comptroller of the State of Florida. The purpose of the suit is to have the court declare as void the 1962 tax assessment and levy upon certain hospital-owned property assertedly entitled to tax exemption and to permanently enjoin the appellant tax assessor from assessing and the appellant tax collector from collecting the 1962 tax upon that property, which is utilized as housing for nurses and other hospital personnel. Appellants have brought this interlocutory appeal from the chancellor’s order denying their motions to dismiss and for summary decree.
*32 Essentially, the complaint, assaulted by appellants for insufficiency to state a cause of action for which relief could be granted, sets out the following allegations:
Appellee is a corporation not for profit licensed by the state board of health and is •exempt from payment of federal income tax. The property in question is located to the south of and adjacent to property upon which appellee’s hospital stands. Appellee is a hospital entitled to tax exemption as a benevolent and charitable institution devoted to benevolent and charitable purposes under the constitution and statutes of Florida and is engaged also in educational and scientific fields including education and training of nurses and medical interns, continuing education for physicians, and medical scientific research. As to the hospital’s property north of that in issue, exemption was allowed by the tax assessor for the year 1962 and all prior years of the hospital’s existence, such exemption having been recognized by the tax assessor on the tax rolls. The property involved is improved with facilities for housing of hospital personnel, including those on twenty-four hour call in case of emergencies. Rentals paid by such personnel are only for the cost of maintenance and repairs and are used for maintenance of the hospital and its facilities. They are devoted •exclusively to the charitable purposes of appellee, and are, in fact, less than sufficient to cover the actual maintenance of the housing. Appellee has found it necessary to have a certain amount of housing available in order to obtain nurses and other personnel needed for efficient operation of the hospital and living quarters have been made available by it for its personnel for many years. Until the year 1962, the property now used for the housing has never been taxed by Palm Beach County, which recognized its exempt status under Article IX, Section 1, Constitution of the State of Florida, F.S.A., and Section 192.06(3), Florida Statutes, F.S.A. A tax in the amount of $3,088.50 was arbitrarily assessed and levied upon the subject property for the year 1962.
Thus, the taxing officials of Palm Beach County and the federal government have recognized the tax exempt status of the hospital itself, so this is not in dispute.
After considering the arguments advanced by appellants, we find we must differ with their position and agree with the ruling of the chancellor.
Exemption from taxes for property used for municipal, educational, literary, scientific, religious, or charitable purposes was created by the Constitution of the State of Florida. Article IX, Section 1 provides, “The Legislature shall provide for a uniform and equal rate of taxation, * * * excepting such property as may be exempted by law for municipal, education, literary, scientific, religious or charitable purposes.” Article XVI, Section 16, states, “The property of all corporations, * * * whether heretofore or hereafter incorporated, shall be subject to taxation unless such property be held and used exclusively for religious, scientific, municipal, educational, literary, or charitable purposes.” The implementing statute, Section 192.06(3), exempts, “Such property of educational, literary, benevolent, fraternal, charitable and scientific institutions within this state, as shall actually be occupied and used by them for the purpose for which they have been or may be organized, provided, not more than seventy-five per cent of floor space of said building or property is rented, and the rents, issues, and profits of said property are used for the educational, literary, benevolent, fraternal, charitable or scientific purposes of said institutions * * * ”. At this point it may be observed that the amendment to Section 192.06, or subsection (13)[1] enacted by the 1963 legis *33 lature, effective December 31, 1963, specifically allows tax exemption for the housing facility concerned here, but is not operative in this case.
Under the question of sufficiency of the complaint, appellants direct their argument chiefly to the seventy-five per cent rental limitation specified in Section 192.06(3), stating that the complaint is silent about what percentage of the housing facility is rented or available for rent. This, they say, leaves the plain inference that one hundred per cent is rented or available for rent, since the housing facility is a single purpose building, an apartment house for nurses and other hospital personnel. Appellants take the further position that, by the rents charged, the hospital is in competition with private landlords and is engaged in a commercial enterprise. They therefore urge that the complaint alleges no cause of action for which relief could be afforded.
From certain cases of various jurisdictions, there has evolved a majority view supportive of the proposition that tax exemption of a hospital which qualifies for it under constitutional or statutory requirements extends to embrace housing supplied by it for its personnel. Thus, the Supreme Court of California in Cedars of Lebanon Hospital v. Los Angeles County, 1950, 35 Cal.2d 729, 221 P.2d 31, 15 A.L.R.2d 1045, found that a tax exemption allowable to the hospital itself extended also to property used as housing for nurses, student nurses, interns, and other personnel. This case is published at 15 A.L.R.2d 1045 with annotation at page 1064 involving the question of tax exemption for housing provided by a hospital for nurses and others connected with its operation. We are subsequently mentioning other cases dealt within this annotation. A California case expressing the same view as that in Cedars of Lebanon is St. Francis Memorial Hospital v. San Francisco, 1955, 137 Cal.App.2d 321, 290 P.2d 275; see also Fredericka Home for the Aged v. San Diego County, Cal.App. 1949, 206 P.2d 931, affirmed, 1950, 35 Cal. 2d 789, 221 P.2d 68. The Virginia court, in Memorial Hospital Ass’n. of Va. v. County of Wise, 1962, 203 Va. 303, 124 S.E.2d 216, determined that apartment units rented by the hospital to members of its staff had been erroneously assessed for taxation. From the New York jurisdiction comes the case of St. Luke’s Hospital v. Boyland, 1962, 12 N.Y.2d 135, 237 N.Y.S.2d 308, 187 N.E.2d 769, wherein it was decided that certain apartment buildings of the hospital located across the street from it were tax exempt as to those portions of them actually occupied by hospital personnel and members of their families. In Minnesota, the court held in State v. Fairview Hospital Association, 1962, 262 Minn. 184, 114 N.W.2d 568, that a hospital’s lake property used by student nurses in the hospital school of nursing for rest, recreation, and relaxation and located 22.6 miles from the hospital and nurses’ home was tax exempt. The New Jersey case of Princeton Tp., Mercer County v. Tenacre Foundation, 1961, 69 N.J. Super. 559, 174 A.2d 601, allowed tax exemption for the residence of the director of a sanitorium annd nursing home. In Oregon, the court concluded in Corporation of Sisters of Mercy v. Lane County, 1927, 123 Or. 144, 261 P. 694, that a nurses’ home and also hospital grounds upon which were located tennis courts were entitled to tax exemption. Two Ohio cases, Aultman Hospital Ass’n v. Evatt, 1942, 140 Ohio St. 114, 42 N.E.2d 646, and Good Samaritan Hos *34 pital Ass’n. of Sandusky v. Glander, 1951, 155 Ohio St. 507, 99 N.E.2d 473, involved situations where tax exemption was accorded. In the first, the property was a home for student nurses located two blocks from the hospital; in the second, the property in question was being remodeled for use as a student nurses’ home and had not yet been used as such.
Appellants cite the case of Johnson v. Mississippi Baptist Hospital, 1925, 140 Miss. 485, 106 So. 1, wherein the court arrived at a decision divergent from the view adhered to in the cases which we have previously mentioned. The more narrow view expressed by the Mississippi court, however, as to the taxing of nurses’ living quarters maintained by the hospital is clearly contrary to the weight of authority.
The cases above cited as illustrative of the majority view demonstrate that the housing facilities owned by a hospital and used by it toward the effectuating or accomplishing of the purposes for which it was established are within the tax exempt category. In some of these, rents were paid; in others, no rents were required to be paid for the facilities in question; in yet others, no mention is made of rent. In those where rent was paid, it was the use of the facility and the use of the funds derived which governed. As we have pointed out, however, appellants believe that the seventy-five per cent provision of Section 192.06(3) defeats the tax exempt status of the housing facility for the year 1962.
 Since the widely accepted criterion as to tax exemption of such a hospital facility is the element of use, we note as to this phase of the implementing statute, Section 192.06(3), that the portion of it preceding the rent proviso definitely requires that the constitutionally specified property must be actually occupied and used for the purpose for which the institution had been or might be organized. This is the basic prescription to be fulfilled for entitlement to tax exemption. Then as to use of income from rentals, the proviso requires that “rents, issues, and profits of said property” be used for the specified purposes of the institution and sets out seventy-five per cent as a limit for rentals of the floor space of tax exempt property. Also there is the further proviso in the section that the stated limitation shall not apply to rooms or beds rented, or available for rent, to patients of any tax exempt hospital. It may be recalled that in the cases of Cedars of Lebanon, Memorial Hospital Ass’n. of Va., and St. Luke’s Hospital, the facilities provided by tlie hospitals in question were rented to their personnel; but, as the court said at page 773 of 187 N.E.2d in the St. Luke’s case, adverting to other cases, “Payment of rent by faculty members and others in the cases cited was held not to destroy tax exemptions. Presumably their salaries or other remuneration would be reduced proportionally if their living accommodations had been furnished without charge to them. That is not a crucial factor. * * * ”
Consonant with the theory of use as being the crucial factor in determining tax exemption are certain cases decided in the Florida jurisdiction. The Florida Supreme Court in State ex rel. Cragor Co. v. Doss, Tax Assessor of Lake County, 1942, 150 Fla. 486, 8 So.2d 15, was of the view that the right to exemption is determined by use to which the property is put and not by the character of the corporate owner. In Orange County v. Orlando Osteopathic Hospital, Inc., Fla.1953, 66 So.2d 285, the court decided that a charitable institution does not lose its charitable character and its consequent exemption merely because recipients of its benefits who are able to pay are required to do so, where funds so procured are devoted to charitable purposes of the institution. In the case of ITungerford Convalescent Hospital Association v. Osborn as Tax Assessor of Duval County, Fla.1963, 150 So.2d 230, the court held that realization of profit from hospital operations will not forfeit the charitable *35 tax status where such funds are devoted to charitable purposes of the.institution.
 The property in issue is allegedly utilized for the charitable purposes of the hospital; it is owned by the hospital and is under its control. The nurses and other personnel who occupy it are employees of the hospital itself and are also under its direction and control. The personnel and the facility which houses them comprise a vital adjunct of that institution and its operations. The rentals are devoted exclusively to maintenance of the housing and of the hospital; no profits are involved; there is no commercial, competing, or speculative enterprise. In short, there is no renting out of property within the contemplation of the restrictive proviso contained within Section 192.06(3). In providing nearby residence accommodations for certain of its key personnel, including those on twenty-four hour call duty, the hospital is accomplishing the necessary function of having at hand added skilled assistance which it can commandeer in time of emergency. Moreover, it is a matter of common recognition that, within the operation of today’s efficient and complete hospital, the institution is expected to and does customarily provide for its nurses and certain others of its essential personnel intra-in-stitutional or neighboring living quarters. Appellee cites as supportive of its position opinion number 060-94 rendered under date of May 9, 1960, by the Honorable Richard W. Ervin, as the then attorney general; we are in accord. So finally it may be said that the 1963 amendment to which we have referred is carrying out in express language .that which is the generally accepted rule.
Having decided the basic question of sufficiency of the complaint, we find it unnecessary to go into the specifics of the ■chancellor’s denial of appellants’ motion for summary decree; we discern no error .as to this.
Affirmed.
SMITH, C. J., and WHITE, J., concur. “

. “All property, real and personal, of any hospital, licensed by the state board of health, owned and operated by a Florida corporation not for profit, which has been exempt from the payment of taxes to the United States upon the income *33 derived from the operation, of such hospital, and used by such hospital for hospital purposes, including but not limited to housing for nurses, interns and other hospital personnel, laboratories, laundries, parking lots, auditoriums, lecture halls, animal houses, pharmacies and other hospital uses; provided that all income of sueh hospital, remaining after payment of the usual and necessary expenses of operation, including the payment of liens and encumbrances upon its property, shall be used exclusively for educational, charitable or scientific purposes, including the maintenance, improvement or expansion of its facilities.”